## THE CHICAGO CITY RAILWAY COMPANY

*v.*

## THOMAS LEACH.

*Opinion filed February 17, 1904—Rehearing denied April 6, 1904.*

1. FELLOW-SERVANTS—*plaintiff must allege and prove that relation of fellow-servants does not exist.* In an action by a servant against the master for an injury alleged to have occurred through the negligence of another servant, the plaintiff must allege and prove that the relation between him and such servant was such as to render the master liable for the latter's negligence. (*Chicago and Alton Railroad Co.* v. *House,* 172 Ill. 601, and *Hartley* v. *Chicago and Alton Railroad Co.* 197 id. 440, explained.)

2. SAME—*when question should be submitted to the jury.* If there is any evidence tending to prove the required averment that plaintiff and the servant whose alleged negligence caused the injury were not fellow-servants, that issue must be submitted to the jury.

3. SAME—*when question of fellow-servants is one of law.* If there is no controversy about the facts, which are such.that a verdict finding that the parties were not fellow-servants would not be sustained by the evidence, the question whether such relation exists is one' of law for the court, and should not be submitted to the jury.

4. SAME—*general test as to fellow-servants stated.* Servants of a common master are fellow-servants where they are co-operating, at the time of the injury, in the particular business in hand, or their usual duties are of a nature to bring them into habitual association, or into such relations that they can exercise an influence upon each other promotive of proper caution.

5. SAME—*personal acquaintance or previous personal association is not the test as to fellow-servants.* The rule as to relation of fellow-servants does not rest, in any degree, upon personal acquaintance or previous actual association between the servants, but upon the relation of their duties to each other and the respective positions they hold.

6. SAME—*rule as to particular business in hand must be given reasonable interpretation.* The first branch of the fellow-servant rule respecting co-operation in the particular work on hand must be given a reasonable interpretation, and is not restricted, on the one hand, to identical work, nor, on the other, does it embrace the general business of the master.

7. SAME—*servants on separate cable trains are not necessarily co-operating in particular business.* A gripman and conductor on the same cable train are directly co-operating in the particular business in hand, but they are not necessarily co-operating, in the particular business, with the gripmen and conductors on other cable trains which may be following them.

8. SAME—*when gripmen and conductors on separate cable trains are fellow-servants.* Gripmen and conductors whose duties are to run their trains in such a manner as not to injure those in charge of trains next preceding or following them, and having power and opportunity to exert the influence required, are fellow-servants with other men in the service running such preceding or following trains, within the second branch of the fellow-servant rule.

MAGRUDER, WILKIN and RICKS, JJ., dissenting.

*Chicago City Railway Co.* v. *Leach,* 104 Ill. App. 30, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

W. J. HYNES, S. S. PAGE, and H. H. MARTIN, for appellant.

WING & WING, and JAMES C. MCSHANE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This case was before us on a former appeal, when the judgments of the Appellate Court for the First District and the superior court of Cook county were reversed for error of the superior court in sustaining a demurrer to a plea of the Statute of Limitations. An additional count of the declaration, stating a new cause of action, had been filed after the statute had run and issues of fact under that count had been submitted to the jury and found in favor of appellee. (*Chicago City Railway Co.* v. *Leach,* 182 Ill. 359.) The case has since been tried upon proper issues, resulting in a verdict for appellee for $15,000, upon which judgment was entered. On appeal to the Appellate Court for the First District the judgment was affirmed.

Plaintiff was a conductor on defendant's street railway, and in his declaration alleged that he was injured through the negligence of other servants of the defendant. On the trial he offered evidence tending to prove that his injury was caused by the negligence of Golden, a gripman, and the first alleged error consists in the re-

fusal by the trial court of an instruction offered by defendant that the burden of proof was upon the plaintiff to prove, by a preponderance of all the evidence in the case, that he and Golden were not fellow-servants. The instruction correctly stated the law as declared in *Joliet Steel Co.* v. *Shields*, 134 Ill. 209, where that subject was given full consideration and where it was the determining question in the case. The charge in the declaration was that the plaintiff, a track repairer, had been injured by the negligence of other servants of the defendant in placing an iron mold in an insecure and dangerous position near the track, and the declaration neither alleged in express terms that they were not fellow-servants of the plaintiff, nor such facts as would lead to that conclusion. It was held that in all actions for negligence the burden is upon the plaintiff to allege and prove such negligent acts of the defendant as will entitle the plaintiff to recover; that it is not sufficient for one servant to prove that he has been injured by another servant of the common master, but that it is also necessary to prove that the relation of the servants is such as to render the master liable to one for the negligence of the other. In the subsequent case of *Louisville, Evansville and St. Louis Consolidated Railroad Co.* v. *Hawthorn*, 147 Ill. 226, where the declaration alleged that the plaintiff was a fence builder and was injured by the negligence of a locomotive engineer, the court, calling attention to the fact that in the *Shields case* there was nothing in the declaration to show that the other servants were not track repairers with the plaintiff, held that it was not necessary to aver in the declaration, in so many words, that the negligent servant was not the fellow-servant of the plaintiff, where the facts stated showed that the relation of fellow-servant did not exist. In *Chicago and Alton Railroad Co.* v. *Swan*, 176 Ill. 424, the facts showing the relation of the two servants were stated, and showed that they were not fellow-servants, and the same rule was declared. Of

course, the rule as to pleading does not apply where the charge of negligence is against the master himself. (*Libby, McNeill & Libby* v. *Scherman*, 146 Ill. 540.)   Previous to the *Swan case* an opinion of an Appellate Court had been adopted in *Chicago and Alton Railroad Co.* v. *House*, 172 Ill. 601, in which it was said that upon the question whether the servants in that case were fellow-servants appellant was the affirmant though the declaration contained the negative allegation.   No question as to the burden of proof was in any way involved, and it cannot be presumed that the Appellate Court attempted to overrule the decisions of this court on that question. Whatever may have been meant by the statement, if it was intended to establish a new rule as to the burden of proof it was incorrect.   There was no intention in adopting the opinion, or in the case of *Hartley* v. *Chicago and Alton Railroad Co.* 197 Ill. 440, which referred to it, to overrule the previous cases on that question.   It appears to us, however, that the question where the burden of proof rested was properly and sufficiently covered by another instruction given at the instance of the defendant. That instruction stated that the burden of proof was upon the plaintiff upon several different propositions, and that he could not recover unless the fact that he and the gripman, Golden, were not fellow-servants was established by a preponderance of all the evidence in the case.   That instruction being correct and covering the ground, it was not error to refuse the instruction concerning which complaint is made.

At the close of the evidence the defendant requested the court to give an instruction of not guilty, which the court refused to do, and this ruling is the principal subject of discussion by the respective counsel.   Plaintiff was injured by another train, on which Golden was the gripman, running against the rear of the train on which plaintiff was conductor while plaintiff was on the ground between the cars, and it is contended that his injury re-

sulted from an ordinary hazard of his employment, and from his own negligence in going between the cars and not providing any lookout for approaching trains, and that the plaintiff and Golden were fellow-servants of the defendant. The main question is whether plaintiff and Golden were fellow-servants, the other questions being controverted questions of fact, which, in our opinion, were properly submitted to the jury.

What facts will create the relation of fellow-servants between two employees of a common master is a question of law, and whether such facts exist is ordinarily a question of fact to be submitted to the jury, but where there is no evidence fairly tending to prove that they are not fellow-servants, and the undisputed facts show that the relation exists, the question is one of law. If there is any evidence fairly tending to prove the required averment that they are not fellow-servants the court should submit the issue to the jury, but if there is no controversy about the facts and they bring the parties within the relation of fellow-servants so that a verdict to the contrary would not be supported by any evidence, the court should not submit the question to the jury. (*Abend* v. *Terre Haute and Indianapolis Railroad Co.* 111 Ill. 202; *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll*, 176 id. 330.) In this case there was no controversy as to the material facts concerning the relation between plaintiff and Golden as servants of the defendant, which were all either proved by the plaintiff or admitted of record by his counsel upon the trial. If the evidence would justify different conclusions in any respect, it would be with regard to social relations and acquaintance which were wholly immaterial.

The undisputed facts were, in substance, as follows: The accident occurred on September 27, 1893, during the world's fair. The defendant was operating a double track cable street railway from Randolph street, on Wabash avenue, to Twenty-second street, and thence on

Cottage Grove avenue to Seventy-first street, in the city of Chicago.   There was a loop at the north end, around which the cars ran.   At the intersection of Madison street with Wabash avenue one of the tracks ran east on Madison street one block to Michigan avenue, thence north two blocks to Randolph street, thence west on Randolph street one block to Wabash avenue, and thence south on Wabash avenue.   Plaintiff's train consisted of a grip-car and two passenger cars.   McCarthy was the gripman, plaintiff was the conductor on the car next the grip-car and Baker was the conductor on the rear car.   The train was made up at appellant's barn, between Thirty-eighth and Thirty-ninth streets, on Cottage Grove avenue, to make its regular trip north around the loop and back to the south.   When the train was leaving the barn plaintiff boarded it, and after it had gone a few blocks he discovered that there was too much slack between the grip-car and his car, causing them to bump back and forth.   It was his duty to correct this, but he waited to do so until he should reach the north end of the loop, when there would be few, if any, passengers, and he would have more time and the cable ran at but half as high a rate of speed.   The train ran north and turned from Wabash avenue around the loop.   When it reached the east side of Wabash avenue and was about to turn into that avenue it was stopped on Randolph street to shorten up the draw-bars.   The trains ran about two minutes apart, and there was about three hundred feet of clear track between the rear of the train and the corner of Michigan avenue, around which the next train would come.   The sun was shining, and it was a bright, dry, clear morning. Plaintiff got down from his car, and the gripman, McCarthy, fastened his brake and went to the rear end of the grip-car and took hold of the next car to hold them together while plaintiff took up the slack.   Plaintiff looked eastward and there was no train in sight, and he then got down between the cars to make the necessary

change. Neither McCarthy, the gripman, nor Baker, the other conductor, kept any lookout to see whether any other train was approaching. At the usual time the next train, in charge of Golden, came around the corner of Michigan avenue into Randolph street, and ran, without stopping or warning, against plaintiff's train, driving it around the curve into Wabash avenue and knocking down the plaintiff, who was dragged along under the train and seriously and permanently injured. The evidence tended to prove that Golden was looking to the north-east and not looking out for plaintiff's train.

Defendant had over five hundred gripmen and conductors running its trains, who all had the same headquarters and the same superintendent and were governed by the same rules. The trains followed each other over the tracks, regulating their movements by the trains ahead. There were frequent stops and delays by obstructions and accidents, or something getting into the slot, and if a train stopped, the one behind was required and accustomed to stop. If a train lost the cable it would wait for the one behind to push it to a point where the cable could be taken up. Each train consisted of a grip-car and one or more passenger cars, each of which had a conductor. The defendant had two lists,—one of conductors and the other of gripmen,—and the men at the head of the gripmen's list ran with the men at the head of the conductor's list, and so on down the line. Whenever a conductor or gripman missed his run, quit the service or was discharged, all those below him were moved up one point, so that a conductor generally ran with the same gripman, but on account of the changes plaintiff ran with many different gripmen. There is no evidence that he ever ran with Golden, and he did not remember that he had ever seen him, but they had run on the same line for several months.

The rule in this State as to what will constitute fellow-servants has been very frequently defined and ex-

plained.   This court has held the master to a stricter
accountability for injuries to one servant by the act of
another servant than courts in general.   The generally
prevailing rule that all servants of a common master are
fellow-servants was rejected, and it was held that where
a servant was employed in a department separate and
distinct from that of a servant whose negligence caused
an injury, the master would be liable. (*Ryan* v. *Chicago and
Northwestern Railway Co.* 60 Ill. 171; *Pittsburg, Ft. Wayne and
Chicago Railway Co.* v. *Powers,* 74 id. 341.) The rule as to
consociation was also adopted, and was first expounded
at length in the case of *Chicago and Northwestern Railway
Co.* v. *Moranda,* 93 Ill. 302.   In that case, servants of a
common master were classified on the basis of their rela-
tion to each other at the time of an injury or their usual
duties.   The rule established was, that those are fellow-
servants who are co-operating, at the time of an injury,
in the particular business in hand, or whose usual duties
are of a nature to bring them into habitual association,
or into such relations that they can exercise an influence
upon each other promotive of proper caution.   If they
are not co-operating in some particular work, or if their
usual duties are not such as to bring them into habitual
association so that they may have the opportunity and
power to influence each other to the exercise of caution,
they are not fellow-servants.   It was said in that case
that the rule of *respondeat superior* rests upon considera-
tions of public policy and is founded on the expediency of
throwing the risk upon those who can best guard against
it, and that the liability of the master must turn upon
the same consideration.   This is the principle underlying
the application of the doctrine whether it was adopted on
grounds of public policy or because the risk is assumed
by the servant in entering the service, and the relation is
made to depend upon the existence of association between
servants which enables them, better than the employer,
to guard against risks or accidents resulting from the

negligence of each other. The rule, however, docs not rest in any degree upon personal acquaintance or actual previous association between the servants, but upon the relation of their duties to each other and the respective positions which they hold. The rule, stated as a mere abstract proposition, might suggest previous personal acquaintance between individuals, and it is apparent from the opinion of the Appellate Court in this case that that court so regarded it, but this is clearly incorrect.

Counsel for the appellee concede that a personal acquaintance between the plaintiff and Golden was not essential to make them fellow-servants; that it was the position which Golden held and the position which the plaintiff held which should determine the question, and that if plaintiff had taken the position of some conductor who had been running the same train with Golden they would be fellow-servants while on the same train, even though plaintiff should be injured within a few minutes after his employment, and their claim is that the employees on different trains are not fellow-servants. The classification is of servants as such, and not of individuals, and if two servants are brought within the classification they instantly become fellow-servants although they may never have seen each other before. That was the case in *Abend* v. *Terre Haute and Indianapolis Railroad Co. supra,* where it was held that a blacksmith and other employees in a wrecking crew, made for the occasion, became fellow-servants. The nature of the employment determines the relation, and the rule must be uniform and capable of a reasonable application. To hold the master exempt from liability for an injury to one who had been long in his service and had associated with the other employees, and to hold him liable for a like injury under the same circumstances to a new servant, would be wholly unwarranted.

One branch of the doctrine is, that those are fellow-servants who are directly co-operating with each other

in some particular work, and it is contended that the particular work in hand at the time of the accident to plaintiff was the running of defendant's trains at the place of the accident, and therefore the employees on the two trains were fellow-servants. The rule must have a reasonable and practical interpretation, and if co-operation in particular work should be construed to mean identical work, the rule would not apply in any case, since no two servants would ever be doing the same identical thing at the same time. A conductor and gripman have separate duties, and yet they are directly co-operating with each other in the particular work of running a train. On the other hand, the particular work in hand does not include the general business of the master. The general business of the defendant was the running of trains on its road, and we do not see how the particular business in which plaintiff was engaged could be extended to include other trains· which were following him. The question whether the qualifying words with respect to the exercise of influence modify both branches of the rule is of no importance. Where two servants are directly co-operating in the particular work in hand, they are brought into such relations that they may exercise such influence. (*Pagels* v. *Meyer*, 193 Ill. 172.) The addition of qualifying words is wholly unnecessary, and if there is direct co-operation, nothing further is required to bring them within the relation. Where the servants are not so directly co-operating in some particular work, their usual duties must require co-operation or habitual association.

The remaining question is whether the plaintiff and Golden were fellow-servants under the second branch of the rule, or, in other words, whether the usual duties of the employees of the defendant upon one train were of a nature to bring them into habitual association with the employees on the next train preceding or following them, so that they might exercise an influence upon each other promotive of proper caution. There is no similarity be-

tween the relation of servants on different trains on a
steam railroad, which are run under orders and directed
by a train dispatcher for the purpose of preventing in-
terference and collisions, and the relation of servants on
these trains, which followed each other over the tracks
and managed their trains with reference to each other.
This case is very much like the case of *Chicago and East-
ern Illinois Railroad Co.* v. *Driscoll, supra*, where it was held
that yard crews employed to perform the same character
of service at the same time, using the same tracks and
working near each other, were fellow-servants though
under different foremen. It was there held that an in-
struction to find for the defendant should have been given
on that ground. In *Leeper* v. *Terre Haute and Indianapolis
Railroad Co.* 162 Ill. 215, it was held that a finding by the
Appellate Court that an injury to a fireman on one sec-
tion of a train which was running in three sections was
caused by the negligence of an engineer running another
section, and that said servants were in the same general
grade of service and the same line of employment, whose
duty it was to be on constant guard not to injure each
other and whose relation was such as to promote caution
for the safety of each other, was a finding that the ser-
vants were fellow-servants. In this case, the undisputed
evidence was that plaintiff and Golden were in the same
general service and the same general line of employment,
and that it was the duty of the employees on one train
to run it in such a manner as not to injure those on the
train next preceding, and that the duties of employees
on such trains were such as to bring them into habitual
association, with power and opportunity to influence
each other by advice and caution. They were, in the
strictest sense, engaged in the same character of service,
in which they were brought into such relations to each
other as to depend upon each other for their safety,
and with power to observe the manner in which each dis-
charged his duty, and to influence each other by caution,

advice and example. There was no disputed fact to be submitted to the jury, and the facts proved by plaintiff, or admitted, brought him and Golden within the legal definition of fellow-servants. It was therefore error to refuse the instruction asked for by the defendant.

The judgments of the Appellate Court and the superior court are reversed and the cause is remanded to the superior court.                    *Reversed and remanded.*

MAGRUDER, WILKIN and RICKS, JJ., dissenting.