## Illinois Steel Company v. Peter Lulenski, Administrator.

### Gen. No. 13,324.

1. FELLOW-SERVANTS—*when rule with respect to, precludes recovery*. No recovery can be had where it appears that the plaintiff's injuries resulted from the negligence of a fellow-servant directly co-operating with him in the particular business in hand at the time of the accident, and that their respective duties were such as brought them into habitual association such that they might exercise an influence upon each other promotive of proper caution.

2. FELLOW-SERVANTS—*definition of, construed*. One may be a fellow-servant if his co-operation be in the particular work in which the injured servant was employed; he need not be engaged with such servant in doing the identical thing at the same time.

3. SAFE PLACE TO WORK—*extent of duty of master to provide*. The duty of the master to provide a safe place for a servant to perform his duties and to use reasonable care to maintain its safety does not involve the duty "to have a representative present at every moment to keep the place * * * safe as against all possible negligence of a co-employe."

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed, with finding of facts. Opinion filed October 4. 1907.

**Statement by the Court.** This is an appeal from a judgment obtained by appellee as administrator of the estate of Andrew Wolak, deceased, in an action brought to recover damages occasioned by the death of said Wolak, alleged to have been caused by the negligence of appellant.

Plaintiff's intestate, hereinafter referred to as the deceased, was in the employ of appellant in its foundry at South Chicago. At the time of the accident the deceased was in a "pouring pit," as it is called. This pit, which was about six feet deep and ten feet square, it was a part of his duty to keep in proper condition to receive a so-called "small ladle" which at least twice a day appears to have been lowered into the pit, to be filled with melted iron. The ladle

was lowered, lifted and moved to and from the place where it was filled to where its contents were poured into moulds by one or the other of two electric cranes. The cranes were operated by a man occupying a so-called cage suspended from the beam of the crane about fourteen feet above the ground. At the bottom of the pouring pit was a plate the purpose of which was to catch the slag as it was skimmed by the deceased and a helper from the surface of the melted iron poured into the ladle. While being thus filled and skimmed the ladle was suspended in the pit from the crane so that its bottom was about three feet above the plate at the bottom of the pit. When thus suspended, there was a space of about six inches between the ladle and the sides of the pit. The small ladle was filled by deceased and his helper from a larger ladle of molten metal brought from the blast furnaces over railroad tracks laid near the pouring pit. In performance of his duty of keeping the bottom of the pit in proper condition, the deceased and his helper, with the aid of the crane and its operator, was accustomed to remove the plate from the bottom of the pit, which was then cleaned out. Afterward the plate was replaced if it had in the meantime been cleaned. If it had not been cleaned it was replaced with another plate.

The day of the accident the pit had been cleaned and the plate replaced in the bottom. The deceased was preparing for another pouring. He had climbed down into the pit and was placing sand or clay about the chains attached to the plate in order to protect them from hot metal that might fall from the ladle. While he was so engaged the operator of crane number 2 swung the hook of his crane so that it caught the bail of the small ladle which was then lifted from the ground. This it appears should not have been done, until the deceased, whose duty it seems to have usually been to properly place the hook of the crane in the bail of the ladle, was ready to see that this was securely done. The result was that instead of properly and firmly hooking the bail of the ladle the latter was merely caught on the point of the hook of the crane and in this position

the ladle hung suspended. While it was thus hanging the craneman of number 2, who had been operating the crane, was relieved by the craneman of crane number 1, who climbed into the cage and took charge of the crane. It was customary to divide the work of pouring the molten metal between the two cranemen. Craneman number 2 having turned over his crane to number 1, got out of the cage, and the latter craneman apparently not noticing the imperfect way in which the ladle was caught by the crane hook, swung it over the pit in which the deceased was still at work preparatory to lowering it therein. Seeing the deceased in the pit, however, the crane operator stopped the crane, holding the ladle suspended over the pit, and awaited orders. Just then a molder approached intending to turn the ladle into position. As he did so, or undertook to do so, the ladle fell from the hook upon the deceased in the pit, causing his death.

It appears that it was the duty of the molder to assist at the pouring and indicate when the quantity of iron poured into the small ladle was sufficient for the casting required, and while the pouring was being done he usually stood near the deceased, whose duty it was to "hold the machine * * * used to tip the large ladle so that it would pour into the small one, * * * holding it so that the whole business would not dump." When Wolak, the deceased, wished to use the crane he was accustomed to call the craneman, and when the latter brought his crane to Wolak in obedience to such signal he would, as he testifies, do as Wolak directed him. The craneman by whom the ladle was swung over the pit just before it fell had been working in that position about eight months at the time of the accident, during all which time Wolak had been likewise employed there at the work he was engaged in when killed.

KNAPP, HAYNIE & CAMPBELL and WILLIAM BEYE, for appellant.

PEASE, SMIETANKA & POLKEY, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that the evidence, in which there is no material conflict, shows the death of appellee's intestate resulted from the negligence of a fellow servant directly co-operating with the deceased in the particular business in hand at the time of the accident, and that their respective duties were such as brought them into habitual association such that they might exercise an influence upon each other promotive of proper caution. In this contention we are compelled to concur. The undisputed evidence tends to show that the accident was the result of the negligence of the cranemen, first, in picking up the heavy ladle upon the point of the hook of the crane without waiting for the deceased, who usually attended to that duty, or for anyone else to see that the bail of the ladle was securely caught and firmly held before it was lifted from the ground; and second, in swinging it while thus imperfectly caught over the pit in which the deceased was then at work. There can, we think, be no question but that the cranemen and the deceased were directly co-operating in the work in hand, namely, preparing to put the small ladle in position in the pit to receive the molten metal from the larger ladle, and when so in position to fill and remove it. In preparing the pit for reception of the ladle, in removing with the crane the plate from the pit that the slag might be cleaned from it, in lowering the clean plate into its place, in attaching the hook of the crane to the small ladle, in lowering the latter into the pit, in holding it there while the deceased assisted in the operation of pouring into it from the larger ladle, and while the deceased skimmed the graphite from the surface of the melted iron, in lifting the ladle from the pit on the signal from the molder, the cranemen and the deceased were acting as fellow servants and were habitually co-operating in the business in hand up to the moment of the accident. In cleaning out the pit and removing the slag left there as it was skimmed from the molten metal poured into the small ladle, the crane was used to lift out the heavy pieces of slag and remove them to the proper place in the foundry

after the deceased and his helper had tied it in bundles. There are other details in which the cranemen and the deceased worked together, which we need not further enumerate.

If it be suggested that there may also have been negligence contributing to the accident on the part of the molder who is said to have taken hold or to have been about to take hold of the crane or ladle to turn the latter into proper position at the moment the ladle fell, such act of the molder if it be assumed to have been negligent, must also be deemed the act of a fellow servant of the deceased, co-operating with him in the business then in hand. It was the molder's business to tip the ladle so as to enable the deceased to skim the graphite over its rim. He supervised the pouring and signalled when the proper quantity had been poured into the small ladle. His object in taking hold of the ladle, if he did so, or in attempting to take hold of it, was to put it in position for lowering into the pit to be filled and in this he was co-operating with the deceased and his helper, as well as with the craneman and perhaps others in the business then in hand. It is true these men were not all the time nor solely co-operating with the deceased in his work. They were also co-operating with other employees in other work at different times. But as said in Chicago City Ry. Co. v. Leach, 208 Ill., 198–207, "the rule must have a reasonable and practicable interpretation and if co-operation in particular work should be construed to mean identical work, the rule would not apply in any case, since no two servants would ever be doing the same identical thing at the same time." See also Abend v. T. H. & Ind. R. R. Co., 111 Ill., 202–211. In C. & E. I. R. R. v. White, 209 Ill., 124–128, the rule is stated in language quoted from Joliet Steel Co. v. Shields, 146 Ill., 603–609, as follows: "Persons may be fellow servants, although not strictly in the same line of employment. One person may be employed to transact one department of business and another may be employed by the same master to transact a different and distinct branch of business, but if their usual duties bring them into habitual

association so that they may exercise a mutual influence upon each other promotive of proper caution, such persons might be regarded as fellow servants." So in the case at bar, the cranemen and the deceased were manifestly brought into habitual association by their usual daily duties; and the rule is not affected by the fact that at the moment of the accident the deceased was not in position to protect himself against the consequences of negligence by one or more of those co-operating with him at the time in the particular business of the common master then in hand.

It is urged in behalf of appellee that the cause of the accident was the negligence of a foreman in permitting the ladle to be swung over the pit before it was ready and before the deceased had gotten out; that it was his business "to see that things were done right as much as possible," and that he failed to perform his duty in this respect. There is, however, no evidence so far as we can discover that the foreman's attention was in any way called to the fact that the ladle was not properly hooked or that it was swung over the pit in that condition. He gave no orders to move the ladle, had nothing to do with its being moved as it was, and apparently knew nothing about it until afterward, and had no opportunity to know. A duty of the master to provide a safe place for the deceased to perform his duties and to use reasonable care to maintain its safety does not involve the duty "to have a representative present at every moment to keep the place * * * safe as against all possible negligence of a co-employee." So. Ind. R. Co. v. Harrell, 161 Ind., 689–700. See also Herman v. Port Blakely Mill Co., 71 Fed. Rep., 853–856, as to what constitutes a safe place to work.

At the close of plaintiff's evidence and again at the close of all the evidence appellant's counsel requested the court to instruct the jury to find a verdict in favor of the defendant. We are of opinion these requests were erroneously refused. For the reasons indicated the judgment of the Superior Court must be reversed with a finding of facts.

*Reversed with finding of facts.*