John D. Casey, Administrator, Appellee, v. Siegel, Cooper & Company, Appellant.

## Gen. No. 17,398.

1. MASTER AND SERVANT—*when question of fellow-servants is one of law.* Before the question whether the relation of fellow-servants exists in a case can become one of law, it must appear from the evidence that the facts are undisputed, and that the facts shown regarding the relation are of a nature and character so clear and unequivocal that all reasonable men will readily agree that but one conclusion can be drawn therefrom.

2. MASTER AND SERVANT—*when question of carpenter and elevator conductor as fellow-servants is for the jury.* Where a carpenter in a mercantile house, who uses the freight elevator occasionally but is not subject to the orders of the superior officer of the elevator conductor, in inclosing space at the bottom of the elevator shaft near the counterweight guide posts is killed by a descending counterweight, through the negligence of the elevator conductor in failing to observe an arrangement that the elevator shall not ascend, the question whether the carpenter and elevator conductor are fellow-servants is a question of fact for the jury.

3. MASTER AND SERVANT—*when risk of negligence of coemployee is not assumed.* Where a carpenter in inclosing space at the bottom of an elevator shaft near the counterweight guide posts is killed by a descending counterweight either through the elevator conductor's disregarding an arrangement that the elevator should not ascend or, if the arrangement was misunderstood, through the elevator conductor's forgetting or disregarding that the carpenter was at work at the bottom of the shaft, the negligence of the elevator con-

ductor was not an assumed risk unless the conductor was a fellow-servant.

4. MASTER AND SERVANT—*when injured servant giving instructions is not guilty of contributory negligence.* Where a carpenter inclosing space at the bottom of an elevator shaft near the counterweight guide posts gave the elevator conductor certain plain instructions that he supposed were understood, not to permit the car to ascend, and was killed by a descending counterweight, he is not *per se* guilty of contributory negligence in failing to make the conductor understand or comprehend such instructions.

5. MASTER AND SERVANT—*when servant properly protects himself.* Where a carpenter inclosing space at the bottom of an elevator shaft near the counterweight guide posts is killed by a descending counterweight, and there is evidence that he told the elevator conductor to take the elevator up five or six feet and wait until the work was finished, the carpenter has done what a reasonably prudent man would have done under similar circumstances.

Action in case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook county; the HON. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed November 29, 1912. *Certiorari* denied by Supreme Court (making opinion final).

J. F. DAMMANN, JR., for appellant; AUGUSTUS BINSWANGER, of counsel.

BURRES & McKINLEY, for appellee; WILLIAM J. STAPLETON, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

From a judgment in favor of plaintiff for $5,000 damages for negligently causing the death of the plaintiff's intestate, defendant appeals to this court, claiming that the trial court erred in refusing to direct a verdict for the defendant for the reasons, as stated by counsel, that the deceased was guilty of contributory negligence, that he assumed the risk of the condition and danger existing at the time of the injury, and that if there was any negligence on defendant's part, it was the negligence of a fellow-servant of the deceased, for which the defendant is not liable.

Defendant is a corporation doing business in Chicago, and in 1908 occupied an eight story building in

which its business was conducted. In the northeast corner of the building was an elevator which was commonly used for freight purposes, and when so used was not enclosed. It was operated by means of a wire cable, and was provided with a counterweight of iron, which ran up and down between guide posts located at one side of the elevator shaft. This elevator was in charge of an employee of defendant, named Ramsey. The plaintiff's intestate and one Hubert were carpenters employed by defendant, and were working under the direction and supervision of a "boss" carpenter named Schroeder. The carpenters kept their materials and tools in a carpenter shop located on the eighth floor near the freight elevator. The work required of the carpenters took them into all parts of the building, and they were in the habit of using the freight elevator in going with their tools and materials from floor to floor, as occasion required. Preceding the Christmas shopping season of December, 1908, defendant had caused the freight elevator to be converted temporarily into a passenger elevator. For this purpose, a wire grating about eight feet in height had been constructed on the east and west sides of the elevator platform or cab, and the elevator shaft in the basement had been entirely inclosed with boards, except a space a foot or two in width at the northeast corner near the counterweight guide posts. On the morning of December 8, 1908, Schappert and Hubert, who were then in the carpenter shop, were told by Schroeder to finish the work of inclosing the shaft in the basement. They selected two or three pieces of lumber and carried them with their tools to the elevator, then standing at the eighth floor in charge of Ramsey. Schroeder told Ramsey to take the carpenters down and stay with them. All three descended in the elevator from the eighth floor to the basement. There the elevator remained until the boards were hoisted over the wire grating, placed in position over the open space at the northeast corner, and nailed at the top. In order to

do this, Schappert was obliged to climb to the top of the wire grating, and Ramsey assisted in this work to the extent of passing up a board or two and holding Schappert's legs while he was nailing the boards. After the boards had been nailed at the top, Schappert and Hubert stepped out of the elevator into the basement, and told Ramsey to move the elevator upward five or six feet, so that the two carpenters could go into the shaft under the elevator and nail the boards at the bottom. Hubert testified that Ramsey said "All right." Ramsey testified that one of them said "that I should go up out of the way so that they could finish their work." Ramsey then raised the elevator to the first floor, where he took on some trucks, then ascended to the fifth floor, let the trucks off, and then went on up to the top floor. The counterweight, of course, descended as the elevator ascended. Schappert and Hubert went into the elevator shaft as soon as Ramsey had taken the elevator out of the basement, and while Schappert was nailing one of the boards, the descending counterweight struck and killed him.

There were four counts in the declaration as originally filed. The third count was dismissed upon the trial. The negligence averred in the first and second counts is the alleged wrongful and negligent operation of the elevator while Schappert was working at the bottom of the elevator shaft, and it is alleged that the elevator operator was not a fellow-servant of the deceased. The negligence charged in the fourth count is the alleged failure of defendant to warn the deceased that the counterweight would be operated and lowered to the base of the shaft while Schappert was at work at the bottom of the shaft.

In the reply brief of appellant's counsel a summary of appellant's contentions is stated as follows: "The plaintiff's entire claim, as set out in the various counts of his declaration, is based on the assertion that there was no system and no arrangements at the time; and our argument was that those arrangements were either

specific and sufficient, or they were not. If they were specific and sufficient, then the negligence in not following them was that of Ramsey, who was a fellow-servant of the deceased. If they were not specific and sufficient, then (1) inasmuch as Schappert knew that condition, he assumed the risk of working there (not of Ramsey's negligence); (2) inasmuch as it was Schappert's duty to make them specific and sufficient, then if they were not, Schappert was negligent also, he was guilty of contributory negligence.''

The only witnesses who testified as to what occurred at and immediately prior to the time of the accident were Hubert and Ramsey, both called by the plaintiff. Hubert testified to a definite and specific arrangement with Ramsey to the effect that Ramsey was to take his elevator up five or six feet and then wait until Hubert and the deceased could nail the boards. Ramsey testified that something was said to the effect that he should take the elevator up out of the way "so that they could finish their work." If Ramsey understood the arrangement in the same way that Hubert understood it, then his act in taking the elevator beyond the first floor was certainly a careless and thoughtless act under the circumstances. If he did not understand the arrangement as Hubert and Schappert evidently understood it, then his act in going to the top with full knowledge on his part that Hubert and Schappert were working in such a position that they might be injured by the descending counterweight, was likewise a very careless and thoughtless act. In either view, it is clear that it was Ramsey's negligence, in part at least, if not altogether, that caused the injury.

The question then arises, was Ramsey a fellow-servant of Schappert at the time of the injury?

In Chicago City R. Co. v. Leach, 208 Ill. 198, the rule established in this state is stated as follows, (p. 205): "those are fellow-servants who are co-operating, at the time of an injury, in the particular business in hand, or whose usual duties are of a nature to bring

them into habitual association, or into such relations that they can exercise an influence upon each other promotive of proper caution.'' In the same case it is further said, (p. 202): ''What facts will create the relation of fellow-servants * * * is a question of law, and whether such facts exist is ordinarily a question of fact. * * * If there is any evidence fairly tending to prove the  required averment that they are not fellow-servants the court should submit the issue to the jury, but if there is no controversy about the facts and they bring the parties within the relation of fellow-servants so that a verdict to the contrary would not be supported by any evidence, the court should not submit the question to the jury.''

In Gathman v. City of Chicago, 236 Ill. 9, it is said, (p. 15): ''The question whether the servants of a common master are fellow-servants is usually a question of fact, and never becomes a question of law unless the facts proven show such relation so clearly to exist that all reasonable minds will readily agree that such is the relation of the servants of the common master to each other.''

In Bennett v. Chicago City R. Co., 243 Ill. 420, the nature of the inquiry in such cases, and the proper functions of court and jury with reference thereto, are stated as follows, (p 428): ''Whether two persons, servants of a common master in a given case, are fellow-servants is a mixed question of law and fact. * * * The definition of fellow-servants is a question of law. * * * The question of the relation of fellow-servants is ordinarily one of fact, and only becomes a question of law when there is no dispute with reference to the facts, and the evidence, with all legitimate inferences to be drawn therefrom, is such that all reasonable and intelligent men must reach the same conclusion.''

In Linquist v. Hodges, 248 Ill. 492, the same principle is again stated in the following language (p. 502): ''The question whether servants of a common

master are fellow-servants within the meaning of the law is usually a question of fact. If, however, the facts are not in dispute and all reasonable men would readily agree as to the conclusions which should be drawn from the admitted facts, the question whether the relation of fellow-servants exists in a given case becomes a question of law."

From these quotations, it will be seen that before the question whether the relation of fellow-servants exists in a given case can become a question of law, two concurrent elements of proof must appear from the facts and circumstances in evidence, viz.: First, the facts must be undisputed; second, the facts shown regarding the relation must be of a nature and character so clear and unequivocal that all reasonable men will readily agree that but one conclusion can be drawn therefrom. It follows, as a necessary corollary to this rule, that even though the facts in a given case are undisputed or admitted, still, if there is room for any reasonable difference of opinion, in the minds of reasonable men, as to the conclusion to be drawn from such facts, then the question whether the relation of fellow-servants exists does not become a question of law, but remains a question of fact for the jury to decide.

Applying these principles to the facts of this record, we do not think it can be held that such facts, though undisputed, establish the relation of fellow-servants between Ramsey and Schappert "so clearly that all reasonable minds will readily agree that such relation existed," but on the contrary, we think there is room for reasonable difference of opinion in the minds of reasonable men upon that question, and therefore, that the court did not err in submitting the question as one of fact to the jury under proper instructions.

In Gathman v. City of Chicago, *supra,* an employee of the bridge department of the city was taking certain measurements on a lift bridge and was seriously

injured by the failure of the bridge tender's assistants to observe and carry out an arrangement he had made with them as to lifting the bridge after he had taken one measurement, in order to enable him to take a second measurement with the bridge open.  Through a mis-understanding of the arrangement thus made, the bridge was opened while Gathman was in a dangerous place and he was injured.  The city contended that the bridge-tender's assistants were fellow-servants of Gathman.  In overruling this contention, the court said, (p. 15):

"Here the injured servant was performing service in one department of the city government and was sent by his superior officer to the bridge to make certain measurements, while the servants of the city causing the injury performed service in another department of the city government and were under the control of other superior officers, and the servants of the city handling the bridge had nothing to do with making the measurements which appellee had been directed to make, their duties being to care for and handle the bridge.

"The appellee and the servants of the city who caused the injury were not, therefore, at the time of the injury co-operating with each other in the particular business of making said measurements or of raising said bridge, but at the time the appellee was injured he was engaged in one employment,—i. e., in making measurements,—while the other servants of the city who caused his injury were engaged in doing an entirely other thing,—i. e., raising the bridge.  The appellee and said servants were not, therefore, necessarily co-operating together at the time appellee was injured.  Neither did the line of the employment or the usual duties of the appellee and the servants of the city who operated the bridge necessarily bring the appellee and said servants into habitual association so that they might exercise a mutual influence upon each other promotive of the caution which would protect each other from an injury which might result from the negligence of each other.  *  *  *  We therefore

think it clear the court properly submitted the question whether the appellee and the servants of the city who controlled the bridge at the time he was injured were fellow-servants, to the jury as a question of fact.''

The same reasoning, applied to the undisputed facts shown by the record in this case, leads to a similar conclusion. As to any alleged ''co-operation in the business in hand,'' the evidence here shows that whatever ''co-operation'' there may have been on the part of Ramsey in the particular work in hand (closing the hole in the side of the shaft) while the elevator was standing in the basement, such co-operation, if it can be called such, ceased when Ramsey took his elevator out of the way of Schappert. At the time of the injury, Schappert was engaged in one employment (carpentering) while Ramsey was engaged in performing the duties of his employment (operating the elevator) and was doing an entirely different work from the work Schappert was doing. It was the lack of co-operation *at that time,* between Schappert and Ramsey ''in the particular business in hand,'' that caused the accident. As to the second branch of the fellow-servant rule, there was no evidence tending to show that the usual duties of Ramsey and of Schappert were of such a nature ''as to bring them into habitual association or into such relations that they could exercise an influence upon each other promotive of proper caution,'' beyond the mere fact that the carpenters used the elevators occasionally. They were not in the same line of employment, nor subject to the orders of the same superior officer. The doing of carpenter work in or around the elevator was not a usual occurrence, but unusual and exceptional. We do not think the usual duties here shown were of such a nature, as to make them fellow-servants necessarily and as a matter of law.

It is also urged that Schappert assumed the risk of being injured while at the bottom of the elevator shaft. The only risk there was in going into the bottom of

the shaft under the ascending elevator, was the possibility that the elevator man would not follow his instructions, or in the absence of any instructions, or in case of a misunderstanding of his instructions, that he would take his elevator to the top, thereby bringing down the counterweight, forgetting or disregarding, the fact that the carpenters were at work at the bottom of the shaft. That is, the only danger was the possible negligence of Ramsey, and such negligence was not one of the ordinary risks assumed by Schappert by his contract of employment, unless Ramsey was a fellow-servant. Gathman v. City of Chicago, *supra.*

It is next claimed that it was Schappert's duty to give proper instructions to Ramsey, and if he failed to do so, he was guilty of contributory negligence. The evidence of Hubert shows that both he and Schappert supposed that Ramsey fully understood the instructions given him. It cannot be said that Schappert was *per se* guilty of negligence in failing to make Ramsey understand or comprehend such instructions. Nor can it be said that the evidence clearly and manifestly shows that Schappert failed to do as a reasonably prudent man in his situation would have done under the same or similar circumstances. The verdict is therefore not manifestly against the preponderance of the evidence in this respect.

We have duly considered the point made regarding the alleged errors in the admission and exclusion of evidence, and without entering into any discussion of such rulings, it will be enough to say that we see no error in the rulings of the court in that regard.

For the reasons indicated, the judgment will be affirmed.

*Affirmed.*