Joseph Foster, Defendant in Error, v. T. A. Cummings Foundry Company, Plaintiff in Error.

Gen. No. 18,205.

1. MASTER AND SERVANT—*who are fellow-servants.* Those are fellow-servants who are co-operating, at the time of the injury, in the particular business in hand or whose usual duties are of a nature to bring them into habitual association, or into such relations that they can exercise an influence upon each other promotive of proper caution.

2. MASTER AND SERVANT—*fellow-servants.* The question whether servants of a common master are fellow-servants is usually a question of fact, yet where the facts are not in dispute and all reasonable men would readily agree as to the conclusions which should be drawn from the admitted facts, the question whether the relation of fellow-servants exists becomes a question of law.

3. MASTER AND SERVANT—*when proper to submit question of fellow-servant relation to the jury.* In a personal injury action, where the evidence showed that plaintiff, who was employed as a moulder in defendant's foundry, seven or eight times a day required the assistance of a crane and would signal to the man who operated the crane who would then move it over and lift the iron box or "flask" used in making moulds, and that plaintiff was struck on the head by a hook from the crane when it was not being used in his work or called for by him, it is proper to submit the question whether plaintiff and the man operating the crane were fellow-servants to the jury and a verdict in favor of plaintiff will be sustained.

Error to the Municipal Court of Chicago; the Hon. Joseph Z. Uhlir, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed May 29, 1913.

**Statement by the Court.** This was a suit to recover damages for personal injuries received by defendant in error, Foster, while employed by the Foundry Company, plaintiff in error. The verdict of the jury and the judgment were favorable to Foster, and plaintiff in error is in this court seeking a reversal.

The parties have stipulated as to the facts as follows:

"The defendant in error was Joseph Foster, forty-eight years old, a molder by trade. The plaintiff in error was T. A. Cummings Foundry Company, engaged in the foundry business in the City of Chicago. Defendant in error was born in German Poland and had been in this country twenty-three years and had worked as a molder fifteen or sixteen years. He had been in the employ of plaintiff in error over a year. In the foundry room in which defendant in error worked was an overhead travelling electric crane which, at the time of the accident and for about two weeks prior thereto, was operated by a man named Peter Matuskey. The crane ran from one end of the shop to the other on a track twenty feet above the floor, and underneath the beam of the crane was a cage which could be run from one end to the other of the crane, so that any part of the shop could be reached. From the cage hung the hoisting tackle. In the cage rode the crane operator, who controlled the movements of the crane and hoisting tackle. By the hoisting tackle was suspended a horizontal six-inch I-beam about eight feet long, from which hung hooks used in picking up the objects that were to be moved. This beam was raised or lowered as might be required, and could be kept clear above the heads of the men on the floor. Defendant in error had a helper named Suydak. Defendant in error and his helper were engaged in making molds which were contained in a two-part iron box or 'flask.' They would make about seven or eight

of these molds per day, and each time one was made it was the custom for them to have the assistance of the crane in handling the flask. Defendant in error would signal with his hand to Matuskey, who would run the crane over to their work. Defendant in error and his helper would then attach the hooks to the top of the flask. Defendant in error would signal to Matuskey to hoist. The top would then be turned over and placed. Defendant in error and his helper would disengage the hooks and then defendant in error would signal to Matuskey to take the crane away. This process was repeated at the making of each mold completed by defendant in error during the employment of Matuskey, but defendant in error never gave any orders to Matuskey other than those mentioned. The accident happened January 17, 1911. Defendant in error was bending over at his work when Matuskey ran the crane along the shop, and defendant in error was struck in the head by the I-beam, and sustained the injuries for which suit was brought.

"The crane had not been called by defendant in error at the time he was injured, and was not being used at the time in connection with his work."

It is also stipulated that—

"Defendant in error's case is based upon the contention that defendant in error and Matuskey were not fellow-servants, and the sole ground upon which plaintiff in error asks a reversal is that defendant in error and Matuskey were fellow servants, and that the only negligence, if any, causing defendant in error's injury, was that of Matusky."

JOHN CLARK BAKER, for plaintiff in error.

JOHN O. WAGNER and IGNATIUS BECKMAN, for defendant in error.

MR. JUSTICE McSURELY delivered the opinion of the court.

It has been repeatedly stated that "those are fellow-servants who are co-operating, at the time of the

injury, in the particular business in hand, or whose usual duties are of a nature to bring them into habitual association, or into such relations that they can exercise an influence upon each other promotive of proper caution." *Chicago City Ry. Co. v. Leach,* 208 Ill. 198 (205).

It has also been repeatedly stated that "the question whether servants of a common master are fellow-servants within the meaning of the law is usually a question of fact. If, however, the facts are not in dispute and all reasonable men would readily agree as to the conclusions which should be drawn from the admitted facts, the question whether the relation of fellow-servants exists in a given case becomes a question of law." *Linquist v. Hodges,* 248 Ill. 491 (502).

Thus far there is harmony in the decisions on this question. When, however, reasonable minds undertake to agree as to the conclusions which should be drawn from admitted facts, unanimity of opinion frequently ceases. It is clear that each case must be controlled by its peculiar facts. Consequently, opinions on this question in cases involving different situations and circumstances do not give much assistance in the determination of the case at bar. None of the many cases cited by both counsel involves such facts as we now have under consideration, and we can discern no principle or test in these cases which guides us to a conclusion as to whether or not the defendant in error, Foster, and Matuskey were fellow-servants at the time of the accident in question.

It is apparent that these men were not co-operating, at the time of the injury, in the particular business in hand. Therefore they do not come within the first branch of the rule. It is contended by plaintiff in error that they were fellow-servants within the second branch of the rule, because their usual duties were such as would necessarily, from time to time, bring them into association. It appears to be the fact that seven

or eight times a day Foster would signal to Matuskey to run the crane over to the point where Foster was working, and lift an iron box or "flask" used by Foster in making molds. This operation consisted in Foster and his helper attaching hooks running from the hoisting tackle of the crane to the top of the box or flask, and then signaling Matuskey to hoist. This box would then be turned over, and Foster and his helper would disengage the hooks and Foster would then signal to Matuskey to take the crane away.

While in a certain sense it might be said that the performance of this operation seven or eight times a day was an habitual association of the men in the discharge of their usual duties, we are unable to see how it can be said, as a matter of law, that it appears beyond doubt or dispute that this relation or association between them was so intimate that they must have had an opportunity to exercise a mutual influence upon each other promotive of proper caution. One can readily see that after they had finished the particular work in which they co-operated, the work of each would be wholly apart from and independent of the work of the other. There would be no occasion at this time for either man in the discharge of his duties to have any thought or care concerning the other. The associations between them were such that we are unable to say that all reasonable minds would agree that they could exercise an influence upon each other promotive of proper caution. At least there is reasonable cause for doubt on this question, and we are of the opinion that the defendant in error not only had the right to have this question submitted to the jury, but we are unable to say that the conclusion of the jury in this regard was against the weight of the evidence.

There was no error, therefore, in the order of the trial court denying the motion for a new trial, and we see no reason to disturb the verdict and the judgment. The judgment will be affirmed.        *Affirmed.*