316 P.2d 887

Jack BUFFAT, Plaintiff-Appellant,

v.

Haróld D. SCHNUCKLE, Defendant-Respondent.

No. 8572.

Supreme Court of Idaho.

Oct. 15, 1957.

Anderson & Anderson, Pocatello, Gilbert St. Clair, Idaho Falls, for appellant.

Merrill & Merrill, Pocatello, for respondent.

SMITH, Justice.

Appellant brought this action to recover damages on account of personal injuries received in an automobile accident which occurred while riding in an automobile driven by respondent.

The pleadings and appellant's evidence present the question whether at the time of the accident appellant was a passenger or whether he was a guest of respondent.

Appellant in his amended complaint alleges that at the time of the accident both he and respondent in effect were fellow servants acting within the scope of their common employment for a common master,

and alleges respondent's ordinary negligence as the proximate cause of the accident. Respondent, on the other hand, denies those allegations, and affirmatively alleges that the host-guest relationship existed between him and appellant at said time.

Respondent moved for a judgment of non-suit at the conclusion of appellant's evidence. The trial court granted the motion on the ground of insufficiency of the evidence to entitle appellant to recover (I.C. § 10–705), in that the evidence established the host-guest relationship as existing between respondent and appellant when the accident occurred. Appellant appealed from the ensuing judgment of non-suit.

Appellant by his assignments asserts error committed by the trial court in ruling that the host-guest relationship existed between respondent and appellant, and in failing to rule consonant with appellant's pleading and proof that respondent and appellant were fellow-servants at the time of the accident.

On a motion for non-suit after plaintiff has rested his case, the defendant must be deemed to have admitted all the facts of which there is any evidence, and all the facts which the evidence tends to prove. I.C. § 10–705, subd. 5; Later v. Haywood, 12 Idaho 78, 85 P. 494; Bank of Commerce, Ltd. v. Baldwin, 12 Idaho 202, 85 P. 497; Donovan v. Boise City, 31 Idaho 324, 171 P. 670; Schleiff v. McDonald, 37 Idaho 423, 216 P. 1044; Sweetland v. Oakley State Bank, 40 Idaho 726, 236 P. 538; Southeast Securities Co. v. Christensen, 66 Idaho 233, 158 P.2d 315; Burt v. Blackfoot Motor Supply Co., 67 Idaho 548, 186 P.2d 498. The rule is stated in Koser v. Hornback, 75 Idaho 24, 27, 265 P.2d 988, 989, 44 A.L.R. 2d 1015, as follows:

"Both the trial court and this court, in reviewing plaintiff's evidence on motion for non-suit, must consider it in the light most favorable to the plaintiff. If there is substantial and competent evidence which, uncontradicted, would justify reasonable men in concluding that plaintiff was entitled to prevail, then the non-suit should be denied. Or, if the evidence is such that reasonable men might draw different conclusions therefrom, as to the controlling issues in the case, then those issues should be submitted to the jury. Burt v. Blackfoot Motor Supply Co., 67 Idaho 548, 186 P.2d 498; McKee v. Chase, 73 Idaho 491, 253 P.2d 787, and cases there cited.

\* \* \* \* \* \*

"The court may not weigh the evidence, or resolve the conflicts therein, or determine what conclusions should be drawn therefrom. That is the function of the jury, and the essence of a jury trial."

A fair summary of plaintiff's case as shown by the evidence, viewed in the light

required by the foregoing rules, is hereinafter set forth.

Appellant and respondent, fellow officers, captain and lieutenant respectively, of the 381st Infantry Regiment, U. S. Army Reserves, were on active duty during July, 1955, at a summer encampment having its headquarters at Yakima Firing Center, Yakima, Washington. The regiment consisted of three battalions,—two from the State of Montana and one from the State of Idaho.

During the encampment appellant's battalion commander requested appellant to organize and supervise a regimental party, sanctioned by the regiment's commanding officer, to be given for the benefit of enlisted personnel. Appellant accepted the assignment and secured the use of a park near Yakima, some seven miles distant from regimental headquarters, where the regimental party was held. The expenses of the party were defrayed from army funds, set aside for that purpose, and from donations made by the officers.

Appellant in organizing the details of the party issued a special bulletin, under the sanction of both the regiment's commanding officer and his battalion commanding officer. The bulletin set forth the time and place of the party, the type of uniform required to be worn, places to assemble for army transportation furnished, athletic contests which would be engaged in between units representing the battalions, and that entertainment, food and refreshments would be furnished. The bulletin warned against abuse of the facilities of the park. All officers and enlisted men were requested and expected to attend.

The army transportation furnished was required to be used by those attending the regimental party, except by those who, by special permission of battalion commanding officers, were allowed to use their own automobiles at their own expense. Respondent obtained permission of his battalion commanding officer to, and he did, use his own motor vehicle in lieu of the furnished army transportation. Appellant used army transportation from regimental headquarters to the park.

The entire regiment, led by the regiment's commanding officer, proceeded in convoy from regimental headquarters to the park to attend the regimental party and in the same manner returned to regimental headquarters, excepting those, including respondent, who had been granted special permission to use their own motor vehicles for such purpose.

Appellant pursuant to his assignment attended to all the details of the regimental party including obtaining certain army entertainers. At the conclusion of the party he relinquished his army vehicle to the entertainers for their transportation from the park. Appellant, while he could have left the park at certain times by the use of other army transportation, stayed at the park in

order to supervise the last details of placing the park premises in order, making payment of certain expenses incurred, and in seeing that all attending the regimental party had left the park. Meanwhile appellant made the request of respondent to ride back to headquarters in respondent's automobile, to which request respondent acceded.

At the time of the accident appellant, respondent and two other officers, in respondent's automobile, were on their way back from the park to the camp headquarters of the regiment. On the way back appellant had intended to stop in Yakima for a personal errand. Appellant did not pay for the ride in respondent's automobile. Respondent was proceeding around a curve when his automobile ran onto the shoulder of the highway and struck a post at the site of a culvert, not visible because of grass growing over it, and struck the culvert which caused the automobile to upset. Appellant was thrown from the vehicle and thereby sustained personal injuries. The army, upon investigation of the matter, found that appellant was injured in line of duty.

The regiment's commanding officer testified that while the officers were not required to attend the regimental party and would not have been punished for not attending, nevertheless they were requested to attend; also, that while appellant was not required to accept the assignment of "putting on" the regimental party, he did so, and that thereupon his presence was required, and he was on duty. The testimony of such commanding officer appears as follows:

"A. * * * I did so state that he [appellant] was requested or asked would be the better word whether he would so accept the putting on of this party. He was allowed in all cases such as this the opportunity if he did not so desire, to refuse.

* * * * * *

"A. Yes, he was in charge of the regimental party.

"Q. Was he required to be there?

"A. You speak of being in charge, I would say yes; he would be required to be there; however, his position was to make all the arrangements and to be sure that it went smoothly * * *."

The regiment's commanding officer then testified concerning the purpose of the regimental party, as follows:

"Q. What is the purpose that you hoped to achieve by having such a get-together, if you know?

"A. Friendly relationship between the members of the units for the simple reason that we are separated so widely over such a wide area and this is the only time and opportunity we have to get together for two weeks of active, also the purpose then would be to create a better understanding and feeling and what not.

320

"Q. Esprit de corps and morale and such as that?

"A. That is right."

The import of the "request" made by the officers to attend the regimental party was brought out by uncontroverted testimony, as follows:

"The Court: Just a moment Mr. Buffat—There is one question—I notice, Mr. Buffat, you used the word, that the officers were requested to be there, does the word 'requested' have any particular significance?

"A. Yes sir, a request is a command in the Army, sir.

\*     \*     \*     \*     \*     \*

"A. To an officer, yes sir."

In that connection the regiment's commanding officer testified concerning his request that the officers attend, as follows:

"Q. Did you issue any request at any time that the officers that could, should attend this regimental party?

"A. I believe that that would be yes. \* \* \*."

The regiment's commanding officer testified concerning the source of the funds used for the regimental party, and for whose benefit the party was put on, as follows:

"Q. Where did the funds come from to put on this party? A. the funds came from two sources, donations from the officers and we received a PX divi-

dend at Camp every year which is to be used for the good of all personnel in the Regiment.

"Q. For whose benefit was this party put on? A. The party was put on for the benefit of the enlisted men.

"Q. By the officers? A. By the officers."

It was developed by the regiment's commanding officer that appellant was acting within the purview of his duties, growing out of his command of the party, when he sought a ride back to army headquarters in respondent's automobile, a portion of such testimony appearing as follows:

"Q. Would he [appellant, Captain Buffat] be subject to punishment for coming home in private transportation? A. No.

"Q. He was not violating any Army Regulation? A. No.

Q. He was acting strictly in accordance with his position as far as that is concerned in being in command of the party? A. Yes, I would say so.

"Q. Assuming particularly if the party that he rode home with had consent to bring private transportation? A. Yes, I think so."

■ The rules applicable to the host-guest relationship are succinctly stated in 60 C.J.S. Motor Vehicles § 399(5), p. 1009, as follows:

"Generally speaking, within the meaning of such statutes, a guest is one who takes a ride in a car driven by another person, merely for his own pleasure or on his own business, and without making any return or conferring any benefit on the operator thereof; one who is carried in an automobile gratuitously, that is, one who gives no compensation for the carriage.

"The term imports that the person riding in a motor vehicle is the recipient of the hospitality of the owner or driver, and has accordingly been defined as one who is invited either directly or by implication to enjoy the hospitality of the driver of a motor vehicle, who accepts such hospitality and takes a ride either for his own pleasure or on his business, without making any return to, or conferring any benefit on, the driver other than the mere pleasure of his company. * * * the relationship of guest and host ordinarily contemplates both an invitation on the part of the owner and an acceptance on the part of the guest, * * *."

In Riggs v. Roberts, 74 Idaho 473, 264 P.2d 698, 700, this Court in adopting the meanings now commonly used in cases of this nature, stated that "guest" under the guest statute means one transported without payment of compensation, whereas "passenger" means one transported for compensation. The following analysis, well supported by authorities appears in that decision:

" * * * to constitute one a passenger, not a guest, while the consideration need not be payment of money, there must be contributed by the passenger to the driver of the car something substantial and of worth to the driver, i. e., commercial, not mere courtesy. Albrecht v. Safeway Stores, 159 Or. 331, 80 P.2d 62. This payment or consideration may be made by the passenger or someone else. In other words, the driver must be actuated by a benefit of substantial value, not mere courtesy or kindness or recognition of the amenities or frindship, regardless of whether the one riding in the car or someone else pays or contributes this consideration, to make the rider a passenger. Melcher v. Adams, 174 Or. 75, 146 P.2d 354; Fuller v. Tucker, 4 Wash.2d 426, 103 P.2d 1086; Eubanks v. Kielsmeier, 171 Wash. 484, 18 P.2d 48; Elliott v. Behner, 146 Kan. 827, 73 P.2d 1116, supra; Ausich v. Frank, 70 Idaho 494, 222 P.2d 1073."

"Furthmore, the authorities indicate there must be a mutual understanding, reasonably clear to both rider and the driver before the trip is undertaken, that the rider's relationship to the driver is that of passenger and not a mere guest. Sprenger v. Braker, 71 Ohio App. 349, 49 N.E.2d 958."

The inference may be drawn from plaintiff's evidence, for the purpose of the

motion for non-suit, that officers attending the regimental party, as requested by their master, including going to the place where the function was held, from regimental headquarters and back in transportation sanctioned by the master, did so in line of duty in their master's employment. Particularly, both appellant and respondent, in lieu of the regular army transportation, could and did use transportation on the way back to regimental headquarters only as authorized, permitted and directed, and therefore as furnished for the nonce specifically for that purpose by the master, for which reason, the inference attains that both of them were acting within the scope and duties of their employment at the time and place of the accident. Dameron v. Yellowstone Trail Garage, 54 Idaho 646, 34 P.2d 417; Eriksen v. Nez Perce County, 72 Idaho 1, 235 P.2d 736.

■ The fact that appellant had indicated a desire to perform a personal errand in Yakima on his way back to regimental headquarters is immaterial since as of the time of the accident, the evidence fails to show any deviation by him from the return route in attendance to any personal matter. Parker v. Twin Falls County, 62 Idaho 291, 111 P.2d 865. On the other hand the evidence indicates that the master's employment created the necessity of travel by both respondent and appellant, and that such necessity existed at the time of the accident. Again, it is immaterial that an incident of

appellant's travel at the time was the serving of a purpose of his own. The rule is clearly stated in In re Christie, 59 Idaho 58, 75–76, 81 P.2d 65, 72, as follows:

"If the work of the employee creates a necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own."

See also Dameron v. Yellowstone Trail Garage, supra.

■ Should the jury find the transporting of appellant to be an incident performed within the scope and duties of the employment, then it would follow that the transportation was designed to be for the mutual benefit of both appellant and respondent as well as for the benefit of their master. In such event the guest statute can have no application.

In Weinrob v. Heintz, 346 Ill.App. 30, 104 N.E.2d 534, 541, it is stated:

"* * * In determining whether a person is a guest within the meaning of the 'Guest statutes' in the several States consideration is given to the person or persons advantaged by the carriage; if it confers only a benefit incident to hospitality, companionship or the like, the passenger is a guest, but if the carriage tends to promote mutual interests of both the person carried and the driver, or if the carriage is primarily for the attainment of some objective or

purpose of the operator, the passenger is not a guest within the meaning of such enactments."

And in Davis v. Woodcock, 101 Cal.App. 2d 618, 225 P.2d 918, 919, appears the following:

"It is the well established rule that 'where the relationship between the parties is one of business and the transportation is supplied in the pursuit thereof for their mutual benefit, compensation has been given and the plaintiff is a passenger and not a guest.' McCann v. Hoffman, 9 Cal.2d 279, 286, 70 P.2d 909, 913."

In 4 Blashfield Cyclopedia of Automobile Law and Practice (Perm.Ed.), sec. 2292, p. 307, is set forth the following comprehensive statement of the rule:

"One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their

common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments."

See also Dobbs v. Sugioka, 117 Colo. 218, 185 P.2d 784; Malloy v. Fong, 37 Cal.2d 356, 232 P.2d 241; Hayes v. Brower, 39 Wash.2d 372, 235 P.2d 482, 25 A.L.R.2d 1431; Thomas v. Hughes, 177 Kan. 347, 279 P.2d 286; Martinez v. Southern Pacific Company, 45 Cal.2d 244, 288 P.2d 868; Fox v. Fox, 75 Wyo. 390, 296 P.2d 252; Milkovich v. Bune, 371 Pa. 15, 89 A.2d 320; Engle v. Poland, 8 Terry 365, 47 Del. 365, 91 A.2d 326; 60 C.J.S. Motor Vehicles § 399(5) b, p. 1011.

█ It is within the province of the jury also to find whether the benefit or consideration resulting to respondent by reason of his transporting appellant under the circumstances aforesaid was substantial and of worth to respondent, thusly to constitute payment for the transportation within the purview of the guest statute. I.C. § 49–1401. For should the jury so find then the further finding would be justified that at the time and place of the accident appellant was not respondent's guest but his passenger, Riggs v. Roberts, supra, and authorities therein cited: Gosselin v. Hawkins, 95 Cal.App.2d 857, 214 P.2d 110; Martinez v. Southern Pacific Company, supra; Engle v. Poland, supra.

The inference may also be drawn from appellant's evidence, for the purpose of the motion of non-suit, that appellant and respondent at the time of the accident were acting and cooperating within the scope of their common and practically identical employment so as to bring them into habitual association and that as a consequence they were fellow-servants. Brayman v. Russell & Pugh Lumber Co., 31 Idaho 140, 169 P. 932, 934, defines fellow-servants in language as follows:

"The courts are not in harmony as to what is necessary to establish the relation of fellow-servant, some holding that those are fellow-servants who serve the same master, work under the same control, and are engaged in the same general business. Having in mind the very reason for the adoption, by the courts, of the fellow-servant doctrine, we hold that the rule supported best by reason and authority is that stated in Chicago City R. Co. v. Leach, supra, [208 Ill. 198, 70 N.E. 222, 100 Am.St.Rep. 216], as follows: 'Those are fellow servants who are co-operating, at the time of an injury, in the particular business in hand, or whose usual duties are of a nature to bring them into habitual association or into such relation that they can exercise an influence upon each other promotive of proper caution.' "

Should the evidence justify a finding of the jury that respondent's negligence proximately caused appellant's injury and consequent damage, then the remaining question is whether, under such circumstances, respondent fellow-servant may be held liable to appellant fellow-servant.

The general rule is stated in Greer v. Pierce, 167 Miss. 65, 147 So. 303, 304, as follows:

"One fellow servant is liable to another fellow servant for his negligence proximately causing the injury of the latter. It is a common-law obligation co-existent with the law of negligence."

See also Judson v. Fielding, 227 App.Div. 430, 237 N.Y.S. 348, affirmed 253 N.Y. 596, 171 N.E. 798; Stulginski v. Cizauskas, 125 Conn. 293, 5 A.2d 10; Dunn v. Gallahar, 72 Ga.App. 135, 33 S.E.2d 382; Nepstad v. Lambert, 235 Minn. 1, 50 N.W.2d 614, 624; Frantz v. McBee Company, Fla., 77 So.2d 796; Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913; 2 Thompson, Negligence, sec. 5777, p. 247; 57 C.J.S. Master and Servant § 578, p. 348.

The judgment of non-suit is reversed and the cause remanded with instructions to grant a new trial. Costs to appellant.

PORTER, TAYLOR and McQUADE, JJ., concur.

KEETON, Chief Justice (dissenting).

In my opinion the evidence was insufficient to entitle appellant to recover on any theory. Appellant requested and accepted a ride in respondent's car. The guest statute, Sec. 49–1401, I.C., controls the situation. No benefit accrued to the automobile driver, nor at the time of the accident and injury complained of were appellant and respondent performing any service for a common employer. Appellant's own testimony clearly establishes that he could have returned from the party to the base in an army truck. The reason he sought the ride with respondent was to stop in town and do a little shopping which he could not have done had he ridden in an army truck. He sought the ride with respondent for his own pleasure and convenience, without consideration, and was accepted as a passenger purely as a matter of hospitality and companionship.

The facts presented do not establish any exception to the rule that a guest while riding with another in an automobile cannot recover for injuries sustained unless the accident which caused the injury shall have been intentional on the part of the owner or operator, or caused by the driver's intoxication or his reckless disregard of the rights of others.

The judgment of nonsuit should be affirmed.