475 P.2d 808

Burdell CURTIS and Norma Curtis, husband and wife, Plaintiffs-Appellants,

v.

E. Lee DEWEY and Ervine Dewey, Defendants-Respondents.

Vadna GARRARD, individually and as Administratrix of the Estate of Theron Wayne Garrard, Plaintiff-Appellant,

v.

E. Lee DEWEY and Ervine Dewey, Defendants-Respondents.

Ida ANDERSON, individually and as Administratrix of the Estate of William C. Anderson, Plaintiff-Appellant,

v.

E. Lee DEWEY and Ervine Dewey, Defendants-Respondents.

Nos. 10522–10524.

Supreme Court of Idaho.

Oct. 20, 1970.

Roger D. Ling, Rupert, for plaintiffs-appellants.

Benoit, Benoit & Alexander, Twin Falls, for defendants-respondents.

McQUADE, Justice.

The three actions involved in this appeal were initiated separately by the plaintiffs-appellants on December 19, 1967. Each of the appellants owned land on Marsh Creek near Declo, Idaho, when, on December 23, 1964, a dam owned and maintained above the appellants' property by the defendants-respondents burst. The appellants alleged that they had suffered damages because of the resulting flood, and they claimed that such damages were caused by the negligence of the respondents in maintaining the dam. The actions were consolidated for trial, and they remain consolidated on this appeal.

The consolidated actions came to trial before a jury in the first week of June, 1969. At the conclusion of the appellants' presentation of their evidence, the district court granted respondents' motion for an involuntary dismissal or a directed verdict.

In granting the respondents' motion, the trial court stated that the appellants had

failed to prove a lack of ordinary care, and that, if there was any negligence, it was not the proximate cause of the damage suffered by the appellants. This conclusion was based on a holding by the district court that the flood was caused by an "Act of God."

Appellants subsequently made a motion for a new trial which was denied. Appellants have brought this appeal from the trial court's orders granting the respondents' motion for a directed verdict and denying appellants' motion for a new trial.

The dam which broke had been owned, operated, and maintained by the respondents, the Deweys, since 1917. It was, appropriately enough, called the Dewey Dam. Its plans and specifications, and later its construction (which varied slightly, but inconsequentially, from the dam plans) had been approved by the Idaho State Reclamation Engineer. It was an earthen structure, approximately ½ mile long and from 20 to 37 feet high. It was constructed with four outlet works, which had a combined discharge capacity of 762 cubic feet per second. The dam also had a large spillway constructed of concrete. It was 13 feet deep, 12½ feet wide, and 63 feet long. The bottom of the spillway was 8 feet below the maximum water line designed for the reservoir and 13 feet below the top of the dam. It had a discharge capacity of approximately 2,000 cubic feet per second.

The actual operating condition of the dam varied from the specifications outlined herein. The spillway had been boarded up with planks and railroad ties. This barrier was relatively immovable and incapable of being readily opened in an emergency; and was thus unlike typical flashboards. The respondents, by blocking their spillway in this manner, substantially increased the volume of water which they could collect behind their dam. The appellants' expert witness testified that, excluding any increment for the lateral extension of the reservoir pond, the damming of the spillway would increase the amount of water behind the dam to 390 acre feet more than it was designed to hold.

There was also substantial testimony that there had been, for sometime, seepage from the toe of the dam. On the day before the dam failed the seepage had increased to the point where it was like water gushing from a "badger hole." There had been little effort made prior to the day that the dam broke to open the four outlet works or the spillway. On December 23rd, when the Dewey ranch foreman was directed to open the outlets, he found that the fourth outlet was stuck and could not readily be opened. He rode back to the barn to obtain a stillson wrench with which to open the last outlet, and before he could return, the dam broke open releasing the impounded waters.

For the several days prior to the dam breaking, and during which the above stated conditions of the dam existed, Marsh Creek below the dam was dry. According to the appellants' witnesses there was not enough water in reservoirs downstream from the Deweys to water stock. For the week prior to the dam break, however, the area of the Marsh Creek watershed had been subjected to a storm described as one likely to happen once in a hundred years.

Appellants introduced evidence indicating there were several water outlets in the dam capable of accommodating a discharge of five or six times the maximum flow of Marsh Creek. There also was testimony to the effect that flooding which might have been caused by a controlled release of excessive flow would not be nearly as devastating as the release of a reservoir through a breach in a dam. Appellants introduced substantial evidence to the effect that they suffered appreciable damages from the flood which resulted from the failure of respondents' dam.

■■ A motion for directed verdict or a motion for dismissal admits the truth of the adversaries' evidence and every inference of fact which may be legitimately drawn therefrom in the light most favorable to the appellants; it is not for the court to weigh the evidence or resolve con-

flicts therein.[1] However, in an action for damages allegedly resulting from negligence the plaintiff has the burden of proof on the separate issues of negligence and proximate cause. The plaintiff must come forward with competent evidence sufficient to permit the jury to find in his favor on both issues. It is our opinion that appellants established a *prima facie* case with respect to the alleged negligence of respondents.

> "Negligence is a matter of risk—that is to say, of recognizable danger of injury. It has been defined as 'conduct which involves an unreasonably great risk of causing damage,' or, more fully, conduct 'which falls below the standard established by law for the protection of others against unreasonably great risk of harm.' "[2]

The unreasonable risk against which the potential tort defendant must guard is one that a reasonable man similarly situated would have foreseen.[3] The foreseeability of the risk must not be judged in the light of subsequent events, but should be determined on the basis of what the defendant knew or could reasonably have known at the time of the alleged tort.[4] The "Act of God" defense to negligence tort actions is based on this premise that negligence cannot be predicated upon a failure to anticipate that which was so extraordinary and utterly unprecedented as to have eluded the foresight of a reasonable man.[5] If, therefore, a person builds a dam or embankment on or beside a waterway sufficient to withstand the maximum flow of water which might be expected, and his structure is destroyed by a flow which would not have been anticipated by a reasonably prudent man, then the resulting flood would be considered such an extraordinary flow of water as to amount to an "Act of God" and that person would not be negligent and not liable for damage caused by the flood.[6] " 'The distinguishing characteristic of an "act of God" is that it proceeds from the force of nature alone, to the entire exclusion of human agency.' "[7]

In this case the respondents had exclusive control of the dam and its operation. They boarded up the spillway, neglected to maintain the toe of the dam properly, waited until the back waters were almost running over the top of the dam before opening the headgates and had received a warning at least one day prior to the breaking of the dam that its condition was critical. Because of these facts it must be concluded that the question of negligence and proximate cause should have been submitted to the jury, together with appropriate instructions for determination as to the responsibility of negligence. There is sufficient evidence in the record upon which the jury might conclude that the respondents negligently operated the dam.

Judgment of the district court is reversed and new trial granted. Costs to appellants.

McFADDEN, C. J., and DONALDSON, SHEPARD, and SPEAR, JJ., concur.

1. Idaho R.Civ.P. 41(b); Shaffer v. Adams, 85 Idaho 258, 263, 378 P.2d 816 (1963); *accord* Callahan v. Wolfe, 88 Idaho 444, 454, 400 P.2d 938 (1965).

2. W. Prosser, Law of Torts 148 (3rd ed. 1964); *see* F. Harper & F. James, The Law of Torts 896 (1956).

3. Harper v. Johannesen, 84 Idaho 278, 287, 371 P.2d 842 (1962); Fairmont Creamery Co. v. Thompson, 139 Neb. 677, 298 N.W. 551, 554 (1941); W. Prosser, *supra* note 2, at 320–321.

4. Harper v. Johannesen, *supra* note 3; Fairmont Creamery Co. v. Thompson, *supra* note 3.

5. Lamb v. Licey, 16 Idaho 664, 670, 102 P. 378 (1909); Harper v. Johannesen, *supra* note 3; Fairmont Creamery Co. v. Thompson, *supra* note 3; Power v. Village of Hibbing, 182 Minn. 66, 233 N.W. 597, 598 (1930); McCauley v. Logan, 152 Pa. 202, 25 A. 499 (1893); W. Prosser, *supra* note 2, at 320–321.

6. Harper v. Johannesen, *supra* note 3.

7. Johnson v. Burley Irrigation District, 78 Idaho 392, 398, 304 P.2d 912, 916 (1956).