509 P.2d 324

**J. Argyle JORDAN, Plaintiff-Appellant,**

v.

**L. P. INGRAM and Ruth Ingram,
Defendants-Respondents.**

**No. 10494.**

Supreme Court of Idaho.

March 15, 1973.

Rehearing Denied May 3, 1973.

Wayne L. Loveless, Pocatello, for plaintiff-appellant.

R. Don Bistline, Pocatello, for defendants-respondents.

SHEPARD, Justice.

This action arose from alleged trespass by defendants-respondents herein on property of plaintiff, the appellant here. At the conclusion of plaintiff's case the court granted defendants' motion for non-suit. The District Court stated:

"The Court finds that the facts presented by the plaintiff do not show an injury to and right of relief in the plaintiff as against these defendants or either of them."

We agree with the finding of the trial court and therefore affirm its action.

Plaintiff and defendants own contiguous real property within the City of Pocatello,

Idaho. A rough sketch of the relevant properties is included herein to facilitate understanding of the facts which otherwise are difficult to describe.

[7652]

---

Defendants have owned the property enclosed by the lines connecting A, B, C, D, since approximately 1937. The property shown as C, E, F, G, is 20 ft. x 30 ft. and has also been owned by the defendants for an undetermined period of time. The property C, E, F, G is subject to a public easement as a continuation of the alley running west from North Buchanan Street. The defendants have used that alley as access to their property for many years. Prior to the time that West Clark Street was extended to the southern border of defendants' property the alley was the only access to defendants' property. In order to reach their property defendants utilized the alley, including that portion C, E, F, G and then crossed a small wedge shaped portion of plaintiff's property bounded by the dotted line G, H. It is uncontested that an easement exists across that wedge shaped

portion of plaintiff's property. Plaintiff's own testimony indicates that such usage has been carried on for a number of years.

Appellant, in her action claims damage by trespass. In 1967 in order to protect their ability to use the easement across plaintiff's property from falling rocks and erosion the defendants constructed a short ornamental stone wall along the line F, G, H. They also erected a fence around the perimeter of their remaining property. Plaintiff's complaint appears based on her contention that she has been denied ingress and egress to her property by the erection of the stone wall. She further contends that there was a continuation of the alley across a portion of the defendants' property which connected with West Clark Street which has been closed by the fencing of the defendants' property. Plaintiff further alleged that the defendants removed soil

from her property and that the ornamental stone wall is located entirely on her property.

It is virtually uncontested that the property of the plaintiff rises very steeply from the area in question herein to the extent that access from the south is virtually impossible.

■ The evidence is clear that the stone wall erected by defendants has protected and maintained their easement across the wedge shaped piece of plaintiff's property. There is no showing that the erection of the wall has in any way damaged the servient estate of the plaintiff. She in effect admits that ingress and egress from the line F, G, H, would be highly impracticable due to the steepness of the terrain. The owner of an easement has the right to maintain and protect that easement. Kirk v. Schultz, 63 Idaho 278, 119 P.2d 266 (1941); City of Bellevue v. Daly, 14 Idaho 545, 94 P. 1036 (1908). Plaintiff herein has not shown that the erection of the stone wall was for other than maintaining and protecting the easement, nor has she shown that the erection of the wall was not necessary for the maintenance and protection of the easement.

■ There was no showing that the wall built along the line G, F, was actually located on property of the plaintiff not subject to the easement. The only so-called evidence to that effect was the statement of the plaintiff herself made without any basis other than her personal belief. Plaintiff did not carry her burden of proof in that regard and hence did not make a prima facie case indicating the existence of trespass by the construction of the wall.

■ Plaintiff likewise failed to make out a prima facie case on her claim that the defendants obstructed a public roadway which existed over their property. Plaintiff also failed to make a prima facie case that the defendants had removed soil from her property. Plaintiff admitted that she had only a suspicion of such an event and had no evidence to support that suspicion.

Such bare allegations are not sufficient to prove a prima facie case.

■ While plaintiff need only make a prima facie case and need not have a preponderance of the evidence, Carver v. Ketchum, 53 Idaho 595, 26 P.2d 139 (1933), there must be sufficient evidence which will support a jury verdict as being reasonable. Schofield v. Idaho Falls Latter Day Saints Hospital, 90 Idaho 186, 409 P.2d 107 (1965); Callahan v. Wolfe, 88 Idaho 444, 400 P.2d 938 (1965); I.R.C.P. 41(b).

Plaintiff additionally has made numerous allegations of some type of conspiracy but argues on that point from outside the record. The record as presented is the determinative factor on appeal and that record fails to support any of such allegations of the plaintiff.

The record contains no evidence upon which a jury verdict for plaintiff could be sustained as being reasonable and the dismissal by the district court was therefore correct. Beckman v. Beckman, 88 Idaho 522, 401 P.2d 810 (1965); Perry v. Perkins, 73 Idaho 4, 245 P.2d 405 (1952).

A large portion of plaintiff's brief and argument is devoted to a discussion of adverse possession. As this court has recently noted, a distinction must be made between prescriptive easements and adverse possession. Deer Creek, Inc. v. Hibbard, 94 Idaho 533, 493 P.2d 392 (1972). Herein only an easement was at issue and no claim of adverse possession appears in the record.

■ In conclusion we note that the complaint in this case is founded in tort seeking damages for trespass. Plaintiff sought $18,000 in actual damages and $50,000 in punitive damages. Plaintiff demanded and received a jury trial. During the presentation of plaintiff's case no damages of any kind, type or amount were shown, alluded to or proven by plaintiff. Hence, the order entered by the district court dismissing the action was correct.

Upon appeal, plaintiff fails to comply with the rules of this court (Supreme

Court Rule 41[2]) and does not set out with distinctness, clarity and specificity what action of the trial court is asserted as error. Rather, plaintiff sets out "questions presented";

"1. Whether the roadways, now closed by respondents and respondents' associates are dedicated properties according to law;

"2. Whether, as a matter of law, respondents own any private easement on, around, or upon appellant's tract;

"3. Whether by enclosure, obstruction ('boxing'), cultivation or either verbal or physical exercise of dominion, respondents may acquire any right to any portion of appellant's tract through claim of adverse possession.

"4. Whether the admitted trespasses of the respondents, with admitted trespasses of others, sustain appellant's prayer for remanding for further trial with respondents' associates sharing the burden of defense as co-defendants."

It might be sufficient to state that appellant's "questions presented" do not constitute any assignment of error as is required by the rules of this court. Secondly, it might be sufficient to state that the content of none of the "questions presented" bear any relationship whatsoever to the trial of the action which, as aforesaid, was one seeking damages for trespass. Nevertheless, we point out where such "questions presented" are deficient. At trial no competent evidence was presented in plaintiff's case that any "roadways" were dedicated.

There is no question but that as adduced in plaintiff's case respondents do own an easement on a certain portion of appellant's tract. As hereinabove pointed out, no question was presented in the trial court of any claim of adverse possession. Of appellant's fourth "question presented" we can only state such is incomprehensible to this court. Plaintiff's complaint designated only the Ingrams as defendants.

Appellant seeks to convince this court that a tort action for damages grounded in trespass and tried to a jury should some-how be converted to an equitable action involving ingress and egress to appellant's property. At trial Defendant L. P. Ingram was called as an adverse witness by plaintiff and during the course of his interrogation stated that he had offered access to the plaintiff, that such offer was refused and that he stood ready to make access available if so needed in the future. Plaintiff in her testimony specifically confirmed Ingram's offer of access. The issue of access was not before the lower court, is not before this court and will not be treated herein.

The decision of the district court is affirmed. Costs to respondents.

DONALDSON, C. J., McQUADE, J., and BEEBE, District Judge, concur.

BAKES, Justice (dissenting):

Plaintiff-appellant's complaint generally alleges that the defendants-respondents have committed five actionable wrongs against the plaintiff: (1) That the defendants have denied plaintiff ingress and egress to her property from the alley by the erection of the stone wall along line FGH; (2) That the defendants have committed trespass against the plaintiff by the erection of the wall and the planting of flowers to the north of line FGH upon the property of the plaintiff; (3) That the plaintiff has a right of way across the northerlymost portion of the defendants' property between points C and D which has been blocked by the erection of the stone wall and the placement of a fence by defendants; (4) That the defendants have trespassed upon the property of the plaintiff and removed soil from her property; (5) That the defendants and others have conspired against plaintiff to deprive her of her rights to her property.

The case was tried before a jury and at the end of the plaintiff's case in chief the court granted defendant's motion for "involuntary nonsuit" on the ground that "the facts presented by the plaintiff do not show an injury to and right of relief in the plaintiff as against these defendants or ei-

ther of them." The trial court treated the motion made at the close of plaintiff-appellant's case as a motion for involuntary dismissal under I.R.C.P. Rule 41(b). However, this case was tried before a jury, and a motion for involuntary dismissal under Rule 41(b) is improper. Such a motion must be treated as a motion for a directed verdict under I.R.C.P. Rule 50(a). As stated in Bauscher Grain v. Natl. Surety Corp., 92 Idaho 229, at 230–231, 440 P.2d 349 at 350 (1968):

> "The motion to dismiss under I.R.C.P. Rule 41(b) as made by respondent . . . and as mentioned in the trial court's order and judgment of dismissal . . . was a misapplication of that rule. The application of this provision for involuntary dismissal was dealt with by this court in Whitney v. Continental Life & Acc. Co., 89 Idaho 96, 403 P.2d 573 (1965). Therein this court pointed out that a 41(b) motion is not proper in a jury case, and that the motion will be treated as a motion for directed verdict under I.R.C.P. 50(a). (Citations omitted)."

*See* Van Vranken v. Fence-Craft, 91 Idaho 742, 748, 430 P.2d 488 (1967); Christensen v. Stuchlik, 91 Idaho 504, 427 P.2d 278 (1967).

Although the two motions are somewhat similar, there are pertinent differences. In

determining the propriety of a motion for involuntary dismissal under Rule 41(b), the federal courts, under their version of Rule 41(b), are free to weigh the evidence and to enter findings of fact based thereon. 9 Wright & Miller, Federal Practice & Procedure, Civil, § 2530 (1971).[1] On the other hand, in ruling on a motion for directed verdict under Rule 50(a), courts are not entitled to weigh the evidence. 9 Wright & Miller, Federal Practice & Procedure, *supra; e. g.,* Bauscher Grain, *supra;* Curtis v. Dewey, 93 Idaho 847, 475 P.2d 808 (1970); Shaffer v. Adams, 85 Idaho 258, 378 P.2d 816 (1963); Buffat v. Schnuckle, 79 Idaho 314, 316 P.2d 887 (1957). The evidence of the plaintiff and every inference of fact to be drawn therefrom must be admitted as true. As stated in Smith v. Big Lost River Irrigation Dist., 83 Idaho 374, 391, 364 P.2d 146, 156 (1961):

> "A motion for a directed verdict . . . admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom. (Citations omitted). This court is firmly committed to the rule that a trial court should not take a case from the jury unless, as a matter of law, no recovery could be had upon any view which properly could be taken from the evidence."[2]

*Accord:* Iverson Paints, Inc. v. Wirth Corp., 94 Idaho 43, 480 P.2d 889 (1971);

---

1. Idaho, in adopting Federal Rule 41(b), omitted the following sentence:

   "In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a)."

   It would therefore appear that the rule in Idaho on involuntary dismissal is the same whether in a jury or non-jury case, i. e., that the motion admits the truth of the plaintiff's evidence and every inference of fact which may be legitimately drawn therefrom in the light most favorable to the plaintiff. Curtis v. Dewey, 93 Idaho 847, 475 P.2d 808 (1970).

2. The definition of legitimate inference has not been concretely established. One authority suggests that an inference is legitimate "where the evidence offered makes the existence of the fact to be inferred more probable than the non-existence of the fact." 9 Wright & Miller, *supra,* at § 2528; *See* 308 F.2d 911, 405 F.2d 1061. In essence, a court must, in assessing the propriety of a motion for directed verdict, view the evidence and all the legitimate or reasonable inferences from that evidence in a light most favorable to the party against whom the motion has been made. Pigg v. Brockman, 85 Idaho 492, 381 P.2d 286 (1963); Whitt v. Jarnagin, 91 Idaho 181, 418 P.2d 278 (1966).

Bratton v. Slininger, 93 Idaho 248, 460 P. 2d 383 (1969); Shaffer v. Adams, 85 Idaho 258, 378 P.2d 816 (1963). The test is the same whether it is the trial court ruling on the motion at trial, or this Court considering the trial court's ruling on appeal. E. g., Alman Bros. Farms & Feed Mill, Inc. v. Diamond Lab., Inc., 437 F.2d 1295 (5th Cir. 1971); 9 Wright & Miller, *supra*, at § 2524; See Buffat & Schnuckle, *supra*, 79 Idaho at 317, 316 P.2d 887 (quoting Koser v. Hornback, 75 Idaho 24, 27, 265 P.2d 988, 44 A.L.R.2d 1015 (1954). In making its assessment, the court is neither free to weigh the evidence, e. g., Shaffer v. Adams, *supra*, nor pass upon the credibility of witnesses. 9 Wright & Miller, *supra*, at § 2527. See, e. g., Big Butte Ranch, Inc. v. Grasmick, 91 Idaho 6, 415 P.2d 48 (1966) where this Court stated: "[T]he credibility of the witnesses and the weight to be given their testimony is for the jury."

Judged by the standards applicable to Rule 50(a) motions, the record in this case clearly shows that the appellant has sub-

mitted sufficient evidence to create litigable issues of fact requiring jury resolution.

First, plaintiff contends that defendants have, by the erection of the stone wall, improperly denied her ingress and egress to her property. As the majority opinion acknowledges, the alleyway leading west from North Buchanan Street, including that portion of defendants' property shown as CEFG, constitutes a public alley or roadway. As such, plaintiff has a common law easement of passage from her property on to the public alleyway. See generally 39 Am.Jur.2d, Highways, Streets and Bridges, §§ 157, 192, pp. 531–533, 570–572 (1968). The testimony in the record adequately supports plaintiff's first contention that her access has been interfered with.[3]

The majority of this Court, in justifying the denial of relief to plaintiff for the interference with this access, make the factual conclusion that the access from the alleyway is "virtually impossible." Such a conclusion cannot be justified in view of the rule which requires us to admit the truth of plaintiff's evidence that this was

---

3. "Q. Mrs. Jordan, with the present trespass wall, the flowers that are there, the changing of the roadway, what is the limitation on you in the use of your property?
"A. I am completely limited

. . . . .

"Q. What does the wall do?
"A. The wall prevents, completely prevents entrance and exit from the lower portion of the tract. . . .
"Q. Then when Mr. Ingram said to you that you were boxed in, what did you understand what he meant?
"A. Just that there—there was no entrance no way to leave the property anyway except wearing jeans and climbing." (Rptr.Tr. pp. 161, 162–163).
During another phase of the direct examination plaintiff, in relating the contents of a conversation between Mr. Ingram and herself, concluded that no other access to the property was feasible:
"Q. Would you relate what happened at this time and here, Mrs. Jordan, you may relate the conversation?
"A. We were not unfriendly. Mr. Ingram told me that he felt the wall was an asset to the area. He told me that he would help me build some other entrance and I said there is none. Oh,

he said there could be some entrance between the wall—the end 'of the wall and the Bonner's property and I said that there couldn't be the way they have not brought their property up on to the tract. He said that there could be an entrance built from Lander since the juncture of pierce (sic) and Lander are on the tract and I reminded him of the telephone cut in the side of the hill the telephone post or electric post that is there, and the guide wires that it would be impassable at this time or I believe at any time for open use. He told me that he was not going to take down his wall and I used the word obstruct, Mr. Ingram used the word boxed. He says, 'I have you boxed. I will buy that property. I'll buy that little piece or all of it. I know what you paid for it,' and I said, 'It is not for sale.'
"Q. Now at this particular time what was his demeanor? What did you understand he was saying to you?
"A. That he had placed the wall there to control the property. To box me, to, if possible, acquire the tract by making it valueless to me, so impossible of development that I would be forced to let it go." (Rptr. Tr. 135–36).

her only practical access. This issue of fact must be resolved by the jury. Curtis v. Dewey, *supra*.

Secondly, plaintiff testified that the defendants constructed a stone wall entirely upon her property rather than upon their own property or upon property subject to the easement. The record shows numerous positive references by plaintiff to the effect that both the rock wall and the lilacs which defendants admit planting behind the wall are located on plaintiff's property.[4] A property owner is presumed to know the boundaries of his own land and is competent to testify as to his own property lines, and such testimony is adequate to support a ruling concerning the location of that line. Dawson v. Davis, 125 Conn. 330, 5 A.2d 703 (1939); State v. Hooper, 3 Conn.Cir. 143, 209 A.2d 539 (1965); Nabours v. Whiteley, 466 S.W.2d 62 (Tex.Civ.App.1971). Therefore, plaintiff's averments that the wall and plantings were located on her property was competent evidence to raise an issue of the trespass. The majority attempts to answer this by saying that, "There is no showing that erection of the wall has in any way damaged the servient estate of the plaintiff." However, actual damages need not be shown in order to make a case in trespass; nominal damages are sufficient. *See* W. Prosser, Prosser on Torts, 66 (3d Ed.1964). Nominal damages, of course, need not be proved. *See, e. g.,* Paurley v. Harris, 77 Idaho 336, 292 P.2d 765 (1956); Taysom v. Taysom, 82 Idaho 58, 349 P.2d 556 (1960).

Regarding plaintiff's third claim concerning trespass and removal of dirt, the defendant, Mr. Ingram, admitted that he trespassed on plaintiff's property and removed "a little dirt" in building the wall and in cleaning up the property around the wall. Plaintiff not only testified as to the dirt removal but estimated the amount and value of the dirt removed. Plaintiff testified that Mr. Ingram admitted going on plaintiff's property and removing trash and other materials as well as some dirt; that she saw Ingram's pickup hauling away things from her property and that a mesa of dirt had disappeared from her property, and that the defendant had built up a ramp on his property with it. On direct examination plaintiff testified that "several hundred" "six to seven" yard loads had been removed. (Rptr.Tr. pp. 157–159). On cross examination plaintiff testified that the defendant had removed "probably around two hundred pickup loads." She estimated this by the size of the mesa removed from her property and by a 12-inch buildup of dirt on the defendant's adjoining property. (Rptr.Tr., pp. 206–208). Plaintiff testified the dirt was worth $6.00 to $7.00 a yard. (Rptr.Tr., p. 159). While a jury might conclude that these figures were exaggerated, nevertheless plaintiff's testimony regarding the trespass and dirt removed coupled with Ingram's express admission of having removed "a little dirt" should have precluded the trial court and this Court from taking this issue away from the jury.

Plaintiff's fourth claim that she had an easement across the northerly portion of

---

4. "Q. Are there any landmarks that you have measured from? I'm not talking about other people, but you?

A. Sighting along the remainder of the planting.

Q. I see. You just sighted along there—stood somewhere and sighted along there and decided the wall is on your property?

A. Since they built the cyclone fence some six or seven feet once—six or seven feet in height once, on my property, admitted it and removed it, I am positive that this would be to block my use of

the land. It is on my land and it effectively prevents me from going upon the property.

Q. You referring to the concrete wall?

A. Yes, and the planting.

Q. And, you're (sic) positive testimony is that it is upon your land?

A. Yes.

Q. Not just the pie shaped area, but the remainder of the wall on down there, it is your positive testimony that it is on your land?

A. To the best of my knowledge." (Rptr. Tr. pp. 155–56, 225, 228).

the defendant's property in the area between points C and D which was a continuation of the alley from North Buchanan, and which was interfered with as a result of the defendants' fencing their property, was also supported by some evidence. Although one witness testified that there was never any public roadway running on line CD and around the defendants' property to Clark Street, (Rptr.Tr. p. 120), another testified that there was a road which was barely passable. (Rptr.Tr. pp. 103–104). Plaintiff's son testified that there was a roadway worn by tires of automobiles or vehicles. (Rptr.Tr. p. 70). Plaintiff herself testified as to the existence of the roadway.[5] There is sufficient, though concededly marginal, testimony to raise a triable issue of fact concerning the deprivation of the plaintiff's right to a right of way across the back of defendants' property.

Regarding plaintiff's fifth claim of a conspiracy, plaintiff alleged in her complaint that the defendant maliciously constructed the stone wall for the purpose of boxing her in and destroying the access to her property. Tr. 248, 251. In support of this allegation, plaintiff testified that the defendant stated to her that he had her "boxed in" and that he was using this as a lever to compel her to sell him the land. Tr. pp. 135–136. If the jury believed these allegations of the plaintiff, the defendant's acts in building the wall which admittedly interfered with her access to her property would constitute a separate act of trespass and justify the imposition of punitive damages.

From the foregoing it is clear that plaintiff has established factual issues concerning violations of her property rights which should be decided by a jury. The granting

of the involuntary nonsuit was error. It was especially prejudicial since the judgment, based as it is on Rule 41(b), is res judicata under the express language of Rule 41(b). Plaintiff has lost forever her access from her property onto the public alley.

I would reverse.

---

5. "Q. And, did you have occasion to use the roadway in back of the Ingram property toward your property there?
A. I was only on the road twice.
Q. And, when were these occasions?
A. The first time a real estate man took me through so that I could examine the looks of the building from all sides. It was passable.

Q. You went through on that road at that time?
A. Yes.
Q. This is all the way through the back of the Ingram property?
A. Yes." (Rptr. Tr. pp. 145–146.)